## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: | Bankr. No. 09-13129-BFK |
| PAMMALLA SHANNON UPLINGER, | Adv. Pro. No. 11-01341-BFK |
| Debtor. | |
| | |
| PAMMALLA SHANNON UPLINGER | |
| Plaintiff, | Civil Action No. 1:13-cv-417- LMO-TCB |
| v. | |
| US INVESTIGATIONS SERVICES, PROFESSIONAL SERVICES DIVISION, INC. | |
| Defendant. | |

**APPELLEE BRIEF**

Dated:  May 2, 2013

By:   Tyler P. Brown, Va. Bar No. 28072
      Tara L. Elgie, Va. Bar No. 48259
      HUNTON & WILLIAMS LLP
      Riverfront Plaza, East Tower
      951 E. Byrd Street
      Richmond, VA 23219
      (804) 788-8200
      telgie@hunton.com
      *Counsel for US Investigations Services,*
      *Professional Services Division, Inc.*

# TABLE OF CONTENTS

I.   STATEMENT OF ISSUES PRESENTED AND
     APPLICABLE STANDARD OF APPELLATE REVIEW ....................................................1

     A.   The Disclosure Issue. ...........................................................................................1

     B.   The Authorization Issue. .......................................................................................1

     C.   The Adequacy of the Findings of Fact and Conclusions of Law. .........................1

     D.   The Lack of Evidence Supporting the Adverse Action Theory. ...........................2

II.  STATEMENT OF THE CASE. .........................................................................................2

     A.   The Bankruptcy Proceedings. ...............................................................................3

     B.   Statement of Facts. ................................................................................................5

     C.   The Bankruptcy Court's Rulings. .........................................................................7

          1.   Count 4. .......................................................................................................7

          2.   Count 2. .......................................................................................................8

III. ARGUMENT .......................................................................................................................9

     A.   Summary of the Argument. ...................................................................................9

     B.   USIS Provided Uplinger with a Clear and Conspicuous Disclosure that the
          Credit Report Would be Used for Employment Purposes. ..................................11

          1.   The USIS Consumer Notification Was Clear and Conspicuous. ...........11

     C.   USIS Obtained Uplinger's Written Authorization to Procure Her Credit Report
          Before June 29, 2009. .........................................................................................12

          1.   On June 26, 2009, Uplinger Authorized USIS to Obtain Her Credit
               Report. .......................................................................................................12

          2.   Uplinger Cannot Raise New Legal Theories on Appeal. .......................13

     D.   The Bankruptcy Court Adequately Stated Findings of Fact and Conclusions of
          Law in Accordance with Fed. R. Civ. P. 52(a). .................................................16

     E.   The Credit Report Played No Role in USIS's Decision Not to Hire Uplinger for
          the Technical Writer Position. ............................................................................18

IV.  CONCLUSION. .................................................................................................................22

ADDENDUM

STATUTORY PROVISIONS ....................................................................... A-1

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Burghy v. Dayton Racquet Club,*
    695 F. Supp. 2d 689 (S.D. Ohio 2010) ..............................................................1, 12

*In re Merry-Go-Round Enters., Inc.,*
    400 F.3d 219 (4th Cir. 2005) ............................................................................1, 2

*J.S.K. Realty Co. v. New Plan Realty Trust,*
    9 Fed. Appx. 89 (4th Cir. 2001)............................................................................18

*Lee v. Zom Clarendon, L.P.,*
    453 Fed. App'x 270 (4th Cir. 2011) ......................................................................14

*Martin v. Deiriggi,*
    985 F.2d 129 (4th Cir. 1992) ...........................................................................2, 18

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)..............................................................................................17

*Siegfried Construction Inc. v. Gulf Ins. Co.,*
    No. 98-2808, 2000 U.S. App. LEXIS 1304 (4th Cir. Feb. 2, 2000) ...........................2

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.,*
    386 F.3d 581 (4th Cir. 2004) ..............................................................................14

### STATUTES

15 U.S.C. § 1681(e) .......................................................................................................15

15 U.S.C. § 1681a(d) ........................................................................................1, 10, 15

15 U.S.C. § 1681b(b)(2)(A)(i) .......................................................................1, 8, 12

15 U.S.C. § 1681b(b)(2)(A)(i),(ii) .......................................................................11

15 U.S.C. § 1681b(b)(2)(A)(ii) .........................................................................1, 13

15 U.S.C. § 1681b(b)(3)(A)..............................................................................2, 10, 18

28 U.S.C. §§ 157 and 1334 ................................................................................................3

## OTHER AUTHORITIES

Fed. Bankr. R. 7052 ........................................................................................................16

Fed. R. Civ. P. 52(a) ....................................................................................1, 5, 9, 16, 17

Fed. R. Civ. P. 52(c) ........................................................................................2, 5, 8, 16

Fed. R. Civ. P. 59(e) ........................................................................................................5

## I.  STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF APPELLATE REVIEW

This appeal, which arises from alleged violations of the Fair Credit Reporting Act

codified at 15 U.S.C. § 1681 et seq. ("FCRA"), presents four principal issues:

### Count 4 – The Summary Judgment Decision

**A.    The Disclosure Issue.**

Whether US Investigations Services, Professional Services Division, Inc. ("USIS")

provided Ms. Uplinger ("Uplinger") with a clear and conspicuous written disclosure that her

credit report[1] would be obtained for employment purposes before USIS procured the credit

report in accordance with 15 U.S.C. § 1681b(b)(2)(A)(i).  The disclosure issue is a question of

law subject to *de novo* review.  *Burghy v. Dayton Racquet Club*, 695 F. Supp. 2d 689, 696 (S.D.

Ohio 2010) (stating that the court determines conspicuousness as a matter of law); *In re Merry-

Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005) (internal citation omitted).

**B.    The Authorization Issue.**

Whether Uplinger provided USIS with written authorization to procure her credit report

for employment purposes before it procured the credit report in accordance with 15 U.S.C. §

1681b(b)(2)(A)(ii).  The authorization issue is a question of law subject to *de novo* review.  *In re

Merry-Go-Round*, 400 F.3d at 224.

### Count 2 – The Rule 52 Decision

**C.    The Adequacy of the Findings of Fact and Conclusions of Law.**

Whether the bankruptcy court adequately stated findings of fact and conclusions of law in

support of the Final Judgment Order in accordance with Fed. R. Civ. P. 52(a).  The issue of

whether the findings of fact and conclusions of law are adequate is a question of law subject to

---

[1] Credit reports fall within the definition of a "consumer report" under 15 U.S.C. § 1681a(d).

*de novo* review. *In re Merry-Go-Round*, 400 F.3d at 224; *Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992).

## D.     The Lack of Evidence Supporting the Adverse Action Theory.

Whether USIS's decision not to hire Uplinger as a technical writer was based in whole or in part on her credit report, thereby triggering the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A). This issue was decided on USIS's motion for judgment on partial findings under Fed. R. Civ. P. 52(c) in which the bankruptcy court concluded there was a complete lack of evidence to support Uplinger's theory. Therefore, it is reviewed *de novo*. *Siegfried Construction Inc. v. Gulf Ins. Co.*, No. 98-2808, 2000 U.S. App. LEXIS 1304, *7-8 (4th Cir. Feb. 2, 2000).

## II.     STATEMENT OF THE CASE

Uplinger sought employment with USIS for a position in support of one of USIS's federal agency customers. After participating in an interview process, Ms. Uplinger was not selected for the role. Uplinger was not happy that she was not hired and ever since she has waged an unrelenting attack against USIS, claiming – without any evidence to support her assertions – that the decision not to offer her employment was predicated on her credit report.

But the facts presented at trial showed that her claims had no merit. After conducting in-person interviews, USIS determined that Uplinger was not the best candidate for the role. Another individual subsequently was hired for the position. Because the individuals who interviewed Uplinger never saw or otherwise heard about the content of her credit report, their decision not to recommend her for hire could not have been predicated upon it. Instead, their recommendation was based on an assessment of Uplinger's capabilities, skills, experiences and demeanor relative to that of the other candidates. Undeterred by the lack of evidence to support her various claims, Uplinger has exploited the bankruptcy court process for nearly two years,

wasting valuable judicial resources and imposing substantial costs on USIS by engaging in what can only be described as vexatious and protracted litigation that is without any basis in law or fact. And, throughout all the prior proceedings, Uplinger has failed to recognize or appreciate that she has the burden of proof with respect to her claims.

This case was commenced on June 28, 2011, as an adversary proceeding in Uplinger's Chapter 13 Bankruptcy Case. The claims were brought under the FCRA pursuant to the bankruptcy court's "related to" jurisdiction. 28 U.S.C. §§ 157 and 1334. On December 3, 2012, after a full and complete presentation of her evidence (that included live testimony from several non-party witnesses), both parties consented to the bankruptcy court's entry of a final judgment. Tr. 12/3/12, p. 4:23-25, 5:1-5.

## A.   The Bankruptcy Proceedings.

The case stems from Uplinger's disappointment that she was not hired for a technical writer position that USIS sought to fill in June 2009. The issues giving rise to this appeal were initially presented to the bankruptcy court in four counts. Count 1 was dismissed on May 18, 2012. Bankruptcy Record ("BKR")[2] at D.I. 1-5, pp. 150-51 (May 18 Order). Count 2 addressed the adverse action issue. Count 3 was withdrawn by Uplinger, with leave of court. BKR at D.I. 1-7, pp. 159-70 (Fourth Am. Compl.) Count 4 addressed the disclosure and authorization issues.

During the bankruptcy court proceedings, Uplinger was afforded every opportunity to present her case. Despite the relative simplicity of the issues, she was permitted to engage in extensive discovery and, as a *pro se* plaintiff, was granted leave to file four amended

---

[2] The complete record from the bankruptcy court is filed in this case at Docket No. 1, subparts 1-1 through 1-7, however the individual page numbering is not sequential. To avoid confusion, any cites to the bankruptcy court record will begin with the docket and subpart number reflected on the District Court docket followed by the page number(s) cited within that particular docket number.

complaints.[3] Cross motions for summary judgment on Uplinger's Third Amended Complaint were filed on August 20, 2012. *See* BKR at D.I. 1-6, pp. 61-90 (USIS MSJ) and pp. 40-60 (Uplinger MSJ). The cross motions were argued on October 9, 2012. Judge Kenney denied Uplinger's Motion for Summary Judgment. BKR at D.I. 1-7, p. 265 (Summary Judgment Order). Judge Kenney granted USIS's Motion for Summary Judgment, in part, dismissing Count 4, but denying the motion as to Counts 2 and 3. In granting summary judgment as to Count 4, Judge Kenney ruled that Uplinger received a clear and conspicuous written disclosure from USIS that it might obtain her credit report for employment purposes and that Uplinger authorized USIS to obtain that report before it was procured. BKR at D.I. 1-7, pp. 270-71. Therefore, Judge Kenney concluded USIS had satisfied both requirements of section 1681b(b)(2)(A). BKR at D.I. 1-7, pp. 271-72.

Also on October 9, 2012, Uplinger filed a Motion to File a Fourth Amended Complaint. The motion was granted, in part, just three days before scheduled trial, permitting Uplinger to consolidate her claims previously presented as Counts 2 and 3 into a single remaining count — Count 2. BKR at D.I. 1-7, pp. 466-68 (Order Granting Motion to Amend); BKR at D.I. 1-7, pp. 159-204 ("Fourth Am. Compl."). Subsequently, the bankruptcy court conducted a three-day bench trial on Count 2, with hearings held on October 26, November 30, and December 3, 2012, during which Uplinger presented the live testimony of five witnesses and was afforded every opportunity to present her case through documentary evidence and witness examination.

---

[3] USIS opposed and the Court denied Uplinger's efforts to re-assert a claim for emotional distress damages in the Fourth Amended Complaint because that claim had previously been withdrawn by Uplinger as part of her Third Amended Complaint. *See* Order Granting, in part, Motion to File Fourth Amended Complaint. BKR at D.I. 1-7, pp. 458-60.

Included among the witnesses presented by Uplinger was Ed Wyviorka, the USIS corporate designee. Uplinger had full opportunity to examine Wyviorka.

At the conclusion of Uplinger's evidentiary presentation, USIS moved for a judgment on partial findings under Fed. R. Civ. P. 52(c), arguing that Uplinger had failed to prove a *prima facie* case that USIS's decision not to hire her was caused, in whole or in part, by her credit report. Judge Kenney agreed Uplinger had failed to carry her burden of proof. After hearing the testimony, evaluating all the evidence, and giving Uplinger the benefit of all inferences, Judge Kenney granted USIS's motion, making findings of fact and conclusions of law on the record on December 3, 2012 and subsequently entering a Final Judgment Order dismissing Count 2. BKR at D.I. 1-7, p. 273-77. (Judge Kenney dismissed Count 2 and granted judgment in favor of USIS "[h]aving considered the Motion, Uplinger's evidence adduced at trial in the light most favorable to the Plaintiff and after evaluating the credibility of the witness testimony, and for all the reasons stated on the record on December 3, 2012.") Following entry of the Final Judgment Order, Uplinger challenged the adequacy of the bankruptcy court's findings of fact and conclusions of law, arguing that they were not sufficiently stated under Rule 52(a), and sought to amend the judgment under Rule 59(e). BKR at D.I. 1-7, pp. 278-94. That motion was denied after oral argument. BKR at D.I. 1-7, p. 453-54 (Order).

## B.    Statement of Facts.

The facts of this case are largely undisputed. In June 2009, USIS was attempting to fill a technical writer position (the "Technical Writer Position") to support its federal government contract with the U.S. Immigration and Customs Enforcement, Federal Protection Services ("FPS"). BKR at D.I. 1-6, p. 62 (USIS MSJ). USIS, through then-Senior Recruiting Specialist James Jones ("Jones"), obtained Uplinger's resume and contacted Uplinger about the Technical Writer Position. BKR at D.I. 1-7, pp. 161-62, ¶¶12-13 (Fourth Am. Compl.). On June 25, 2009,

Jones sent Uplinger an e-mail with nine attached documents. *See* BKR at D.I. 1-6, pp. 113-129 (USIS MSJ). Two documents relevant to this appeal were attached to that e-mail: (i) a Consumer Notification, with the filename Employment Consumer Notification 1.doc (the "USIS Consumer Notification") (BKR at D.I. 1-6, p. 124), and (ii) an Authorization for Release of Information, with the filename Auth for release 6 09 04.doc (the "USIS Authorization") (BKR at D.I. 1-6, p. 116). Uplinger received and read both documents, and signed and returned the USIS Authorization to Jones by e-mail dated June 26, 2009. BKR at D.I. 1-6, at 131, 142 (USIS MSJ Exhibits); Tr. 10/9/12, p. 32-37. On June 29, 2009, Jones obtained a copy of Uplinger's credit report. Opening Brief at Ex. M, Plaintiff's Trial Exhibit ("PTE") 15. An interview for the Technical Writer Position was scheduled with Uplinger for June 30, 2009. PTE 4, 7. That interview was conducted by USIS program manager, Eric Bowman ("Bowman"), and FPS client contact, Michelle Bryan ("Bryan"), a full-time federal government employee. PTE 7, Tr. 10/26/12, p. 151:11-13.

Uplinger testified that after Jones received her credit report on June 29, 2009, he called her and offered her the opportunity to withdraw from consideration for the Technical Writer Position. Tr. 10/26/12, p. 132:24-25, 133:1-3. Uplinger declined that offer, stating she wanted to "press forward and see how the interview goes." Tr. 10/26/12, p. 155:15-18. On June 30, 2009, Uplinger participated in an interview with Bowman and Bryan. Jones was not present in the interview and Uplinger had no further communication with him after June 29, 2009. Tr. 10/26/12, p. 157:2-7. During the interview, Uplinger was never asked about the credit report. Tr. 10/26/12, p. 156:14-25, 157:1. More significantly, Uplinger presented no evidence at trial that either Bowman or Bryan – the only two present during Uplinger's interview – ever saw or knew of the information contained in her credit report. Furthermore, there was no evidence of

6

any kind that Bowman had any conversation with Jones about Uplinger's credit report.  Tr. 10/26/12 at p. 158:3-14.

Significantly, both Bowman and Bryan testified at trial that they had neither received nor otherwise seen a credit report relating to Uplinger.  Tr. 11/30/12, p. 90:11-14; Tr. 12/3/12, p. 30:17-25.

On July 1, 2009, Jones made an entry in USIS's candidate tracking system related to Uplinger's candidacy, stating:  "Rejected for requisition ICE FPS HQ Tech Writer – [555].  Reason for Rejection: Does not meet the required criteria for the role."  PTE 4.  Jones passed away before this litigation was commenced and, therefore, could not testify at trial.  But Edward Wyviorka ("Wyviorka"), who (like Jones) was a Senior Recruiting Specialist for USIS in 2009, did testify regarding Jones' entry into the candidate tracking system.  Wyviorka stated that he understood the entry to mean that following the in-person interview, the USIS program manager, Eric Bowman, concluded that Uplinger did not meet the requirements for the position.  Tr. 10/26/12, p. 54:22-25, 55:1-20.

Bowman testified at trial that, following the interview, he did not recommend hiring Uplinger.  Tr. 11/30/12, p. 89:23-25.  Uplinger called Bryan to testify at trial as well.  Bryan testified that she did not recall ever having met Uplinger.  Tr. 12/3/12, p. 30:21-22.

## C.    **The Bankruptcy Court's Rulings.**

### 1.    Count 4.

After hearing oral argument on the parties' cross-motions for summary judgment, Judge Kenney dismissed Count 4 of the Third Amended Complaint, finding that Uplinger received and read the documents contained in the June 25, 2009 e-mail, including the USIS Consumer

7

Notification[4] and the USIS Authorization.[5] BKR at D.I. 1-7, p. 270 (Summary Judgment Order). The bankruptcy court further concluded that the USIS Consumer Notification began with a succinct phrase that disclosed its purpose plainly: "This is to inform you that a consumer report or an investigative consumer report will be requested from a Consumer Reporting Agency." BKR at D.I. 1-7, p. 271. The remainder of the notice "contains only the bare minimum information to disclose that USIS may obtain a consumer report for employment purposes." *Id.* Thus, the USIS Consumer Notification was clear and conspicuous and satisfied section 1681b(b)(2)(A)(i). *Id.*

The bankruptcy court also found that Uplinger signed and returned the USIS Authorization form, thereby authorizing USIS to obtain her credit report. *Id.* As a result, the bankruptcy court concluded that USIS satisfied the requirements of 1681b(b)(2)(A)(ii) before the credit report was procured. BKR at D.I. 1-7, p. 272. Finding the facts relating to this issue to be undisputed, the bankruptcy court concluded that USIS had not violated section 1681b(b)(2)(A). Accordingly, with respect to Court 4, the bankruptcy court entered judgment in favor of USIS.

    2.    <u>Count 2.</u>

Following the close of Uplinger's case on December 3, USIS moved for a judgment based on partial findings under Fed. R. Civ. P. 52(c). Tr. 12/3/12, pp. 31-47. The bankruptcy court heard USIS's motion and Uplinger's opposition to the motion. After careful consideration of all the evidence presented, the bankruptcy court granted judgment in favor of USIS, dismissing the remaining Count 2 of the Fourth Amended Complaint. Tr. 12/3/12, p. 47-51, BKR at D.I. 1-7, pp. 273-77 (Final Judgment Order).

---

[4] The document referred to as the "USIS Consumer Notification" is attached to Ms. Uplinger's Opening Brief as Exhibit Y.
    [5] The document referred to as the "USIS Authorization" is attached to Ms. Uplinger's Opening Brief as Exhibit K.

The bankruptcy court found that Uplinger had the burden of proving that she suffered an adverse action as a result of her credit report. Tr. 12/3/12, p. 48:5-10. Judge Kenney concluded that Uplinger had failed to present a *prima facie* case showing any causal connection between USIS's decision not to hire her and the credit report. Tr. 12/3/12, p. 49:23-25, 50:1-6. Uplinger decided to "move forward with [her] candidacy" even after the June 29 conversation with Jones and, importantly, she presented "no evidence that there was any discussion of the credit report during [Uplinger's] interview with Ms. Bryan and Mr. Bowman." Tr. 12/3/12, p. 49:1-22. The bankruptcy court concluded: "[h]aving heard all of the testimony of the witnesses, having heard the plaintiff's entire case and giving the benefit of the doubt, the inferences in favor of the plaintiff, I am just compelled to find that the plaintiff has not met her burden of proof in this case." Tr. 12/3/12, p. 50:7-12. After evaluating all the evidence in the light most favorable to Uplinger, the bankruptcy court granted judgment in favor of USIS and dismissed Count 2. *Id.*; BKR at D.I. 1-7, p. 273.

Uplinger subsequently filed a Motion to Amend Judgment and for Additional filings, claiming that the bankruptcy court failed to separately state findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a). That motion was denied after a hearing held on January 15, 2013. BKR at D.I. 1-7, pp. 278-294 (Motion); pp. 453-54 (Order). This appeal followed.

## III.   ARGUMENT

### A.   Summary of the Argument.

The bankruptcy court's orders entering judgment in favor of USIS and dismissing Counts 2 and 4 should be affirmed. As to the Disclosure Issue presented in Count 4, Judge Kenney properly ruled that the USIS Consumer Notification that Uplinger received clearly and conspicuously informed her that USIS might obtain her credit report for employment purposes.

Similarly, in evaluating the Authorization Issue, Judge Kenney correctly concluded, based on the undisputed plain language of the documents, that Uplinger provided USIS written authorization to obtain her credit report for employment purposes by returning the signed, written USIS Authorization by e-mail on June 26, 2009.

Uplinger attempts to raise new issues for the first time on appeal concerning Count 4, claiming that the disclosure and authorization forms that she received covered "investigative consumer reports" and not "consumer reports" as defined by the FCRA. Well-established law precludes considering these brand new claims. Even if these arguments were considered, however, the plain language of the documents and Uplinger's own argument on summary judgment make clear that the claims lack any merit. The term "consumer report" by definition includes a credit report provided by a consumer reporting agency. 15 U.S.C. § 1681a(d). Contrary to Uplinger's argument, the USIS Consumer Notification plainly disclosed that USIS would obtain a consumer report for purposes of evaluating her eligibility for employment and Ms. Uplinger authorized USIS to obtain information about her credit from credit bureaus and other Consumer Reporting Agencies. Moreover, Uplinger conceded at oral argument that she knew all along that USIS intended to procure her credit report.

Count 2 also was properly dismissed because Uplinger did not meet her burden to introduce evidence establishing a *prima facie* case that the decision not to hire her was based in whole or in part on her credit report. Because the conditions of section 1681b(b)(3)(A) apply only if an employer takes adverse action based in whole or in part on a credit report, the bankruptcy court properly dismissed Count 2, granting judgment for USIS. After hearing all the evidence and giving Uplinger the benefit of all of the inferences, Judge Kenney made detailed and particularized findings of fact that adequately supported his legal conclusions.

**B.      USIS Provided Uplinger with a Clear and Conspicuous Disclosure that the Credit Report Would be Used for Employment Purposes.**

      1.      <u>The USIS Consumer Notification Was Clear and Conspicuous</u>

Section 1681b(b)(2)(A) states that a consumer report may not be procured for employment purposes with respect to a consumer unless the person procuring the report:

> (i) provides the consumer with a clear and conspicuous disclosure made in writing, in a document consisting solely of that disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing the procurement of the report by that person. *See* 15 U.S.C. § 1681b(b)(2)(A)(i),(ii).

The undisputed facts before the bankruptcy court revealed that on June 25, 2009, Uplinger received by e-mail from USIS the USIS Consumer Notification. Tr. 10/9/12, p. 31:7:9; Opening Brief at Ex. Y. Uplinger read the USIS Consumer Notification and knew that USIS intended to procure her credit report. BKR at 1-7, p. 270 (Summary Judgment Order); Tr. 10/19/12, p. 36:15-25, 37:13-16.

The USIS Consumer Notification states in the opening paragraph: "This is to inform you that a consumer report . . . will be requested from a Consumer Reporting Agency (CRA). This report is for the purpose of evaluating your eligibility for employment . . . ." Opening Brief at Ex. Y. The USIS Consumer Notification goes on to state that the report requested "may contain information pertaining to your credit worthiness, credit standing, credit capacity . . . . You will be asked to carefully read, sign, and date an 'Authorization for Release of Information' permitting a Consumer Reporting Agency (CRA) to furnish the consumer report to us." *Id.*

Conspicuousness of a disclosure under section 1681b(b)(2)(A) is a question of law. BKR at D.I. 1-7, p. 270 (Summary Judgment Order) (citing *Burghy v. Dayton Racquet Club, Inc.*, 695

F.Supp. 2d 689, 696 (S.D. Ohio 2010)).  In determining whether a disclosure is clear and conspicuous, the bankruptcy court considered

> the location of the notice within the document, the type size used within the notice as well as the type size in comparison to the rest of the document. We also must consider whether the notice is set off in any other way-spacing, font style, all capitals, etc. In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it.

BKR at D.I. 1-7, p. 270 (citing *Cole v. U.S. Capital*, 389 F.3d 719, 731 (7th Cir. 2004)) (other internal citations omitted).  The bankruptcy court rejected Uplinger's claims that the USIS Consumer Notification was not clear and conspicuous.  Instead, Judge Kenney correctly found that the disclosure was conspicuous because it was provided in writing, in a document consisting solely of the Disclosure, that it was brief, presented on the front-side of a one page document and contained "only the bare minimum information to disclose that USIS may obtain a consumer report for employment purposes," without additional language that made the "otherwise straightforward document confusing or misleading in any way."  BKR at D.I. 1-7, p. 271; *Burghy v. Dayton Racquet Club, Inc.*, 695 F.Supp. 2d at 696, 700.

The bankruptcy court properly concluded that the USIS Consumer Notification satisfied § 1681b(b)(2)(A)(i) because it was a one-page, stand-alone document beginning "with a succinct phrase that discloses its purpose plainly: 'This is to inform you that a consumer report or an investigative consumer report will be requested from a Consumer Reporting Agency (CRA).'" BKR D.I. 1-7, at p. 271.

## C.   USIS Obtained Uplinger's Written Authorization to Procure Her Credit Report Before June 29, 2009.

### 1.   On June 26, 2009, Uplinger Authorized USIS to Obtain Her Credit Report.

Under the FCRA, not only must the consumer receive written notice that a consumer

report may be obtained for employment purposes, but the consumer also must provide written authorization for the consumer report to be procured. 15 U.S.C. § 1681b(b)(2)(A)(ii). USIS provided Uplinger with such an authorization form to sign as part of the June 25 e-mail. BKR at D.I. 1-6, p. 113-116. This document, printed with the USIS logo on top, is titled "Authorization for Release of Information." *Id.* at p. 116. It sought authorization from Uplinger for a representative of USIS to obtain any information relating to her activities from sources, such as credit bureaus and CRAs, including information related to her credit. *Id.* The form also advised her that the information was being obtained for the purpose of making a determination as to her fitness for employment. *Id.*

It is undisputed that Uplinger signed the USIS Authorization on June 25, 2009 and returned it to Jones by e-mail dated June 26, 2009. *See* BKR at D.I. 1-6, p. 130-142; Opening Brief at p. 7, Ex. K.[6] Based on these undisputed facts, the bankruptcy court properly concluded that USIS satisfied section 1681b(b)(2)(A)(ii) because Uplinger authorized USIS to obtain the consumer report by signing and returning the USIS Authorization before the credit report was procured. *See* BKR at D.I. 1-7, p. 271.

2.   Uplinger Cannot Raise New Legal Theories on Appeal.

In her Opening Brief, Uplinger argues for the first time that the USIS Consumer Notification provided her notice that USIS would procure an "investigative consumer report" as defined in 1681a(e), and not a "consumer report" as defined in 1681a(d). *See* Opening Brief at p. 11 (claiming that the USIS Consumer Notification provided notice of an "investigative consumer report" and that Exhibit Y[7] "does not contain the phrase 'consumer report for employment

---

[6] Uplinger argues in her Opening Brief that she authorized the Office of Personnel Management ("OPM") and not USIS to procure her credit report. Opening Brief at p. 11, Ex. L. Contrary to Uplinger's claims, and as Exhibits K and L of her Opening Brief make clear, she authorized *both* USIS and OPM to procure her credit report. *See* Opening Brief at Ex. K, L.

purposes anywhere in it.'") Similarly, she now argues that the USIS Authorization was not an authorization for USIS to obtain a consumer report, but rather authorized USIS to obtain an investigative consumer report. Opening Brief at p. 11, Ex. K.

It is well established that absent exceptional circumstances, courts will not consider issues raised for the first time on appeal. *See e.g., Lee v. Zom Clarendon, L.P.,* 453 Fed. App'x 270, 275 (4th Cir. 2011); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 603 (4th Cir. 2004). But Uplinger never made this argument to the bankruptcy court and cannot point to any place in the record where it was raised.

Instead, Uplinger argued that the USIS Consumer Notification was confusing because it did not require her signature and was printed on a blank form; she said she thought it had been sent to her by mistake. *See* BKR at D.I. 1-6, p. 177 ("Uplinger Amended Memorandum in Support of Motion for Summary Judgment"); Tr. 10/9/2012, pp. 35-37. At no time did she dispute that the disclosure she received on June 25, 2009 related to a consumer report or argue instead that it was an "investigative consumer report." As to her authorization for USIS to procure her credit report, the record before the bankruptcy court reveals that Uplinger never disputed that the authorization form she received, signed and returned to USIS related to a consumer report.

Uplinger argued (i) that she authorized the Office of Personnel Management and not USIS to obtain her credit report and (ii) that the USIS Authorization for Release of Information was improper because it contained a waiver. *See* Uplinger Amended Memorandum in Support of Motion for Summary Judgment, BKR at D.I. 1-6, pp. 176-78; Tr. 10/9/2012, pp. 30-39. Contrary to this new argument, Uplinger conceded at oral argument that she knew USIS was

---

[7] The USIS Consumer Notification is marked as Exhibit Y; however, Uplinger mistakenly refers to it in her Opening Brief as Exhibit X.

planning to obtain her credit report.  Tr. 10/9/2012, 36:22-24 ("Your Honor, I'm not trying to claim I didn't know they were going to get a credit report.")

Even if the Court were to consider this new argument, it is meritless.  The FCRA includes within the definition of "consumer reports" any "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [and] credit capacity" that is used or expected to be used or collected in whole or in part for the purpose of, among other things, serving as a factor in establishing the consumer's eligibility for employment purposes. 15 U.S.C. § 1681a(d).  By contrast, an "investigative consumer report" excludes specific factual information on a consumer's credit record obtained directly from a from a consumer reporting agency. 15 U.S.C. § 1681(e).  There is no dispute that the credit report obtained by USIS is a form of consumer report under the FCRA.  Opening Brief at p. 11 (conceding that Exhibit M is a consumer report and not an investigative consumer report).

Contrary to Uplinger's claim in her Opening Brief that Exhibit Y does not contain the phrase "'consumer report for employment purposes' anywhere in it," the USIS Consumer Notification expressly states: "this is to inform you that a *consumer report* or an investigative consumer report will be requested from a Consumer Reporting Agency . . . for the purpose of evaluating your eligibility for employment. . . ." Ex Y (emphasis added).  As this exhibit makes clear, Uplinger's claim that USIS only notified her that it would be obtaining an investigative consumer report is without any basis in fact.

The language of the USIS Authorization is equally clear:  "I hereby authorize a representative of [USIS] to obtain any information relating to my activities.  Sources include... *credit bureaus* . . . and other *Consumer Reporting Agencies (CRAs)*.  This information may include but is not limited to, my . . . *credit*." *See* Opposition Brief at Ex. K (emphasis added).

The USIS Authorization also expressly states that the information obtained by USIS will be used "for the purpose of making a determination as to my fitness for employment." *Id.*

Judge Kenney rightly found that Uplinger authorized USIS to obtain her credit report for employment purposes and that USIS satisfied the requirement of 1681b(b)(2)(A)(ii). As a result, and because there were no exceptional circumstances that excuses Uplinger's failure to raise this issue to the bankruptcy court or to justify this Court's consideration of the argument for the first time, this Court should decline to consider Uplinger's new argument on appeal.

**D.     The Bankruptcy Court Adequately Stated Findings of Fact and Conclusions of Law in Accordance with Fed. R. Civ. P. 52(a).**

Uplinger argues that the bankruptcy court did not state sufficient findings of fact and conclusions of law under Fed. R. Civ. P. 52(a),[8] to support the Final Judgment Order. However, Uplinger does not articulate what she believes to be inadequate or insufficient about those findings, except that she disagrees with the ruling. Rule 52(a) specifically contemplates that findings and conclusions may be stated on the record:

> In an action tried on the facts without a jury. . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions **may be stated on the record after the close of evidence or** may appear in an opinion or a memorandum of decision filed by the Court . . . .

Fed. R. Civ. P. 52(a) (emphasis added).

In granting USIS's Rule 52(c) Motion, the Court made specific findings of fact and conclusions of law on the December 3 record. These findings and conclusions were recorded in the official transcript of the trial proceedings. After viewing the evidence in the light most favorable to Uplinger and resolving all inferences and doubts to her benefit, the Court concluded that Uplinger (i) had the burden of proving that USIS made a decision not to hire her based on

---

[8] Fed. R. Civ. P. 52(a) is made applicable to this Adversary Proceeding by Fed. Bankr. R. 7052.

information contained in her credit report and (ii) that she had failed to meet the burden of proof.

Tr. 12/3/12 at 47:25, 48:1-8.  In support of this determination, the Court made the following

findings of fact and conclusions of law:

> The Court is "not aware of the kind of cases that you describe, applying the burden-shifting under McDonnell Douglass and Title VII type cases, and indeed none have been cited before the court today." Tr. 12/3/12 at 48:11-15.[9]

> Mr. Jones is deceased and cannot testify as to why Plaintiff was denied employment and "certainly we can't say, even giv[ing] plaintiff the benefit of all of the inferences, that the denial of employment was based on the credit report." Tr. 12/3/12 at 48:20-25.

> "We have the June 29th telephone conversation with Mr. Jones in which Mr. Jones offers you the opportunity to withdraw your candidacy; but then he goes on to say, by your testimony, that these matters can't be predicted.  He can't 'handicap it' and he doesn't really know what the results will be if you were to move forward with your candidacy.  Subsequent to your conversation or during your conversation with Mr. Jones, you decide to move forward with your candidacy.  Indeed you, in your words, pressed forward with the candidacy for this position." Tr. 12/3/12 at 49:1:10.

> "There is the interview with Michelle Bryan and Mr. Bowman but number one, and this is important, there's no evidence that there was any discussion of the credit report during that interview." Tr. 12/3/12 at 49:11-14.

> "There's no evidence of any discussion of credit reporting matters or, I should say more accurately, matters contained within the credit report between Miss Bryan and Mr. Bowman." Tr. 12/3/12 at 49:14:17.

> "According to . . . Miss Uplinger's testimony, . . . Eric Bowman's questions during the interview were 'very general and not specific to the job.'  Indeed, there is no evidence that Miss Bryan or Mr. Bowman ever saw the credit report." Tr. 12/3/12 at 19:22.

> "[T]he burden of proof rests with the Plaintiff to prove a prima facie case, that she was denied employment or in the [Fair] Credit Report Act terms suffered an adverse action as a result of the use of her credit report, and I find that the plaintiff has failed in her burden of proof to prove that causal connection between the credit report and the adverse action." Tr. 12/3/12 at 49:25, 50:1-6.

Judge Kenney then concluded by stating:

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Having heard all of the testimony of the witnesses, having heard the plaintiff's entire case and giving the benefit of the doubt, the inferences in favor of the plaintiff, I am just compelled to find that the plaintiff has not met her burden of proof in this case and I'm going to grant judgment to the defendant.

Tr. 12/3/12 at 50:7-11.

Judge Kenney's findings of fact and conclusions of law are more than sufficient to satisfy the requirements of Fed. R. Civ. P. 52(a). *See J.S.K. Realty Co. v. New Plan Realty Trust*, 9 Fed. Appx. 89, 94 (4th Cir. 2001) (holding that the district court met the requirements of Fed. R. Civ. P. 52(a) because it properly specified its findings of fact and it arrived at a permissible conclusion from those facts); *Martin v. Deiriggi*, 985 F.2d at 133 (holding that the district court's lengthy findings of fact and conclusions of law, in conjunction with the trial testimony and documentary evidence referenced therein, provided an adequate basis for the appellate court to determine whether such findings were clearly erroneous).

**E.      The Credit Report Played No Role in USIS's Decision Not to Hire Uplinger for the Technical Writer Position.**

Before an employer can take an adverse action based in whole or in part on a candidate's consumer report, the FCRA requires that the consumer be given a copy of the report, and a description of her rights. 15 U.S.C. § 1681b(b)(3)(A). The sole issue presented in Count 2 of Uplinger's Fourth Amended Complaint was whether USIS's decision not to hire Uplinger was based in whole or in part on her credit report, thereby triggering the provisions of section 1681b(b)(3)(A). The evidence presented by Uplinger at trial made clear that the credit report played no role in USIS's hiring decision.

From the inception of this litigation, Uplinger has continued to expound her baseless theory that James Jones acted alone in making the decision not to hire her and that his decision was based on her credit report. This theory is premised on Uplinger's pure speculation. As the

18

bankruptcy court's findings of fact and conclusions of law reflect, the evidence in this case did not support her claim. The evidence in Uplinger's own case was that USIS made a decision not to hire her after she met and interviewed on June 30, 2009 with Bowman, the USIS program manager, and Bryan, the client contact for FPS. Judge Kenney found, and Uplinger admits, that neither Bowman nor Bryan ever saw or discussed Uplinger's credit report. Tr. 12/3/12 at p. 49:11-22; Opening Brief at p. 12.

Uplinger's conclusion that the credit report factored into the decision not to hire her rests on her interpretation of a printout of her internal candidate profile within USIS's applicant tracking system — referred to as the "Taleo" database. PTE 4. This document reflects an entry into the Taleo database made by James Jones on July 1, 2009, stating "Rejected for requisition ICE FPS HQ Tech Writer – [555]. Reason for Rejection: Does not meet the required criteria for the role." *Id.* Uplinger believes that this database entry proves her theory that (i) Jones had authority to make the decision not to hire her for the technical writer position and (ii) Jones decided not to hire her because she had a judgment reflected on her credit report. But that theory had no evidence to support it at trial.

Jones is deceased, so he could not explain this entry in the Taleo database as it relates to who decided not to hire Uplinger or the reason that she was rejected for the technical writer position. But when asked to explain what such an entry in the Taleo database means in the recruiting process, Edward Wyviorka who, like Jones, was a USIS Senior Recruiting Specialist in 2009, testified, without contradiction:

> what this phrase means to me, 'does not meet the required criteria
> for the role' was after a candidate has met and interviewed with the
> program manager what was found is that the resume, the
> experience or the candidate's expression of their understanding of
> a technical writer role after meeting with the subject matter expert
> did not translate to what was needed for the role out on the actual

contract support position that the person interviewed for.

Tr. 10/26/12, p. 57:18-25, p. 58:1; *see also*, Tr. 10/26/12, p. 54:22-25; p. 55:1-6, 19-21; p. 59:4-16; p. 60:20-24; p. 62:10-23.

Wyviorka testified that any entry in the Taleo database regarding a hiring decision "was the result of what we [the Senior Recruiting Specialists] received from the USIS program manager, Eric Bowman, [i.e.,] that the candidate, and I'm paraphrasing, did not meet the required criteria for the role." Tr. 10/26/13, p. 70:1-6. This testimony is consistent with an affidavit signed by Jones and introduced into evidence by Uplinger in which Jones states: "On July 1, 2009, I was informed by Bowman that Uplinger would not be hired because she did not meet the required criteria for the position/role." Opening Brief at p. 8, PTE No. 21.

As Wyviorka made clear in his testimony, a USIS recruiter like Jones does not have hiring authority for USIS, but rather is responsible for updating the internal Taleo database system based on direction that he receives from a program manager following an interview. Tr. 10/26/12, p. 71:3-11. Bowman testified at trial that "following [his] interview with [Ms.] Uplinger, [he] did not recommend that she be hired." Tr. 11/30/12, p. 89:23-25. Bryan was the only other person present in the June 30, 2009 interview and was called by Uplinger to testify at trial. Bryan did not recall ever having met Uplinger. Tr. 12/3/12, p. 30:21-22.

After hearing all of Uplinger's evidence, the bankruptcy court ruled that Uplinger had failed to satisfy her burden of proving that she suffered an adverse action as a result of information contained in her credit report. Tr. 12/3/12, p. 48:5-8. The bankruptcy court found, even giving Uplinger the benefit of all inferences, that there was insufficient evidence to support a causal connection between the credit report and the employment decision. Tr. 12/3/12, p. 48:17-25. Judge Kenney found that the June 29, 2009, conversation between Uplinger and Jones was inadequate to support any causal connection between the credit report and the employment

20

decision because according to Uplinger's own testimony, Jones could not predict "what the results would be if [she] were to move forward with [her] candidacy.   Indeed, you, in your words, pressed forward with the candidacy for this position." Tr. 12/3/12, p. 49:1-10.

Following that conversation, Uplinger did move forward with the process and interviewed with Bowman and Bryan.  She had no further contact with Jones.  Yet there was no evidence of any discussion during the interview of any matters contained within the credit report between Bryan and Bowman and no evidence that either Bryan or Bowman ever saw the credit report. Tr. 12/3/12, p. 49:11-22.  As a result, Judge Kenney concluded that Uplinger had failed to prove a *prima facie* case that she was denied employment, or suffered an adverse action, as a result of information contained in her credit report. Tr. 12/3/12, p. 49:23-25, 50:1-12.

**[REMAINDER INTENTIONALLY BLANK]**

## IV.  CONCLUSION

The undisputed facts presented on summary judgment demonstrated that Uplinger received a clear and conspicuous disclosure that USIS may procure her credit report for employment purposes and that she authorized USIS to procure that report before June 29, 2009. Therefore summary judgment in favor of USIS, dismissing Count 4 was proper and should be affirmed.  Likewise, the bankruptcy court properly concluded, after considering all of Uplinger's evidence, the testimony of the witnesses, and giving the benefit of all inferences in favor of Uplinger that there was insufficient evidence of a causal connection between Uplinger's credit report and USIS's decision not to hire her.  Therefore, Uplinger failed to prove a *prima facie* case and the bankruptcy court correctly dismissed Count 2.  The Final Judgment Order dismissing Count 2 should be affirmed.

Respectfully submitted,

US Investigations Services,
Professional Services Division, Inc.

By /s/ Tara L. Elgie
      COUNSEL
Tyler P. Brown, Va. Bar No. 28072
Tara L. Elgie, Va. Bar No. 48259
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
telgie@hunton.com
*Counsel for US Investigations Services,*
*Professional Services Division, Inc*

**ADDENDUM**

**STATUTORY PROVISIONS**

TITLE 15. COMMERCE AND TRADE
CHAPTER 41. CONSUMER CREDIT PROTECTION
CREDIT REPORTING AGENCIES

**15 U.S.C. § 1681a.  Definitions; rules of construction**

. . .

(d) Consumer report.
  (1) In general. The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
    (A) credit or insurance to be used primarily for personal, family, or household purposes;
    (B) employment purposes; or
    (C) any other purpose authorized under section 604 [*15 USCS § 1681b*].
  (2) Exclusions. Except as provided in paragraph (3), the term "consumer report" does not include--
    (A) subject to section 624 [*15 USCS § 1681s-3*], any--
      (i) report containing information solely as to transactions or experiences between the consumer and the person making the report;
      (ii) communication of that information among persons related by common ownership or affiliated by corporate control; or
      (iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons;
    (B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;
    (C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 615 [*15 USCS § 1681m*]; or
    (D) a communication described in subsection (o) or (x).
  (3) Restriction on sharing of medical information. Except for information or any communication of information disclosed as provided in section 604(g)(3) [*15 USCS § 1681b(g)(3)*], the exclusions in paragraph (2) shall not apply with respect to information disclosed to any person related by common ownership or affiliated by corporate control, if the information is--
    (A) medical information;

A-1

(B) an individualized list or description based on the payment transactions of the consumer for medical products or services; or

(C) an aggregate list of identified consumers based on payment transactions for medical products or services.

(e) The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

. . .

## § 1681b.  Permissible purposes of consumer reports
. . .

(b) Conditions for furnishing and using consumer reports for employment purposes.

. . .

(2) Disclosure to consumer.

(A) In general. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

. . .

(3) Conditions on use for adverse actions.

(A) In general. Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this title, as prescribed by the Bureau under section 609(c)(3).

. . .

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, I will electronically file the foregoing *Appellee Brief* with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all registered users. I further certify that on this 2nd day of May 2013, I will serve the foregoing *Appellee Brief* by electronic mail to the following non-filing user:

**Pammalla Shannon Uplinger**
5111 Maris Avenue, Apt 400
Alexandria, VA 22304
shannon@uplinger-uts.com

/s/ *Tara L. Elgie*
Tara L. Elgie, Va. Bar No. 48259
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
telgie@hunton.com
*Counsel for US Investigations Services,*
*Professional Services Division, Inc.*

A-3